UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
PRIMROSE LAMBEY,

     *Plaintiff*,

   v.

ANDREW M. SAUL,

     *Defendant*.
------------------------------X

<u>**MEMORANDUM AND ORDER**</u>

20-cv-1426 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Primrose Lambey ("plaintiff") appeals the final decision of Andrew M. Saul, the Acting Commissioner of Social Security ("defendant"), which found that plaintiff was not eligible for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and that plaintiff was not eligible for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, on the basis that plaintiff is not disabled within the meaning of the Act. Plaintiff alleges that she is disabled under the Act and is thus entitled to receive the aforementioned benefits. Plaintiff is alleging disability since November 5, 2010. (ECF No. 11, Administrative Transcript ("Tr.") at 12, 389.)

        Presently before the court is plaintiff's motion for judgment on the pleadings, (ECF No. 14, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings

("Pl. Mem.")), defendant's cross-motion for judgment on the pleadings and in opposition to plaintiff's motion for judgment on the pleadings, (ECF No. 21, Defendant's Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Mem.")), and plaintiff's reply memorandum of law in support of plaintiff's motion for judgment on the pleadings (ECF No. 24, ("Pl. Reply").)  For the reasons stated below, plaintiff's motion is DENIED and defendant's motion is GRANTED.

## BACKGROUND

The parties have submitted a joint stipulation of facts detailing plaintiff's medical history and the administrative hearing testimony, which the court incorporates by reference. (*See generally* ECF No. 22, Joint Stipulation of Facts ("Stip.").) On April 12, 2012, the plaintiff filed applications for DIB and SSI Benefits. (Tr. at 12.)  The plaintiff claimed she was disabled because of back pain, foot problems, and depressed mood. (*Id.* at 16.)  Her application was denied on August 30, 2012. (*Id.* at 12.)

On September 19, 2012, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On November 13, 2013, ALJ Lori Romeo ("ALJ Romeo") held a hearing in Brooklyn, NY, during which plaintiff appeared and testified. (*Id.* at 45.)  Although Plaintiff was informed of the right to representation, she appeared and testified without the assistance

2

of an attorney or other representative. (*Id.* at 47-48.) After the hearing, the record was kept open for the development and receipt of additional evidence. (*Id.* at 12.) Specifically, interrogatories were sent to vocational expert Darren K. Flomberg, CRC, CCM, CDMS ("Flomberg"). (*Id.*)

In a decision dated February 28, 2014, ALJ Romeo found plaintiff was not disabled. (*Id.* at 9.) On April 16, 2014, plaintiff appealed ALJ Romeo's decision to the Appeals Council. (*Id.* at 7-8.) On April 16, 2015, the Appeals Council denied review of ALJ Romeo's decision, rendering it the final decision of the Commissioner. (*Id.* at 1-4.) In June 2016, Eastern District of New York Judge Carol Bagley Amon held oral argument and remanded the case for further consideration of medical opinion evidence. (*Id.* at 467.) Specifically, Judge Amon ruled that on remand the ALJ should consider medical source statements from Dr. Uribe and Dr. Dobry. (*Id.*) On November 18, 2019, following a hearing, ALJ Jason A. Miller ("ALJ Miller") issued a decision finding that plaintiff was not disabled from November 5, 2010 through December 31, 2015, the date she was last insured. (*Id.* at 406.)

On March 17, 2020, plaintiff filed the instant action in federal court. (*See generally* ECF No. 1, Complaint ("Compl.").) Plaintiff retained new counsel to represent her in the instant action. (*Id.*) On March 20, 2020, this court issued a scheduling order. (ECF No. 5, Scheduling Order.) Defendant

3

filed a motion to stay proceedings due to global COVID-19 crisis until the Commissioner was able to produce a certified transcript of the record. (ECF No. 8, Letter Motion to Stay Proceedings.) The court denied the defendant's motion to stay, but extended his time to serve the administrative record, and all other case deadlines, by sixty days. (Dkt. Order 6/11/2020.) Defendant also filed two motions for an extension of time to file the Administrative Transcript, (ECF Nos. 9 and 10), which the court granted. (Dkt. Orders dated 8/10/2020, 9/8/2020.) On October 9, 2020, the Commissioner filed the Administrative Transcript. (ECF No. 11, Administrative Transcript ("Tr.").)

On December 7, 2020, plaintiff filed a motion for extension of time to file her motion for judgment on the pleadings. (ECF No. 12, Letter Motion for Extension of Time to File.) On the same day, the court granted plaintiff's motion. (Dkt. Order dated 12/7/2020.) On April 7, 2020, plaintiff filed her notice of motion and memorandum of law in support of plaintiff's motion for judgment on the pleadings. (ECF Nos. 13 and 14.) On June 2, 2021, defendant filed a motion for extension of time to file a cross-motion for judgment on the pleadings, which the court granted. (ECF No. 16; Dkt. Order dated 6/2/2021). On July 28, 2021, defendant filed the cross-motion and memorandum of law in support of his cross-motion for judgment on the pleadings and in opposition of plaintiff's motion for judgment on the pleadings.

4

(ECF No 20 and 21.)  On July 29, 2021, plaintiff filed her reply in support of her notice for judgment on the pleadings.  (ECF No. 24).

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008).  "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted).  If there is substantial evidence in the record to support the Commissioner's

factual findings, those findings must be upheld.  42 U.S.C. §
405(g).  Inquiry into legal error "requires the court to ask
whether 'the claimant has had a full hearing under the
[Commissioner's] regulations and in accordance with the beneficent
purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569
F.3d 108, 112 (2d Cir. 2009).  The reviewing court does not have
the authority to conduct a *de novo* review, and may not substitute
its own judgment for that of the ALJ, even when it might have
justifiably reached a different result.  *Cage v. Comm'r of Soc.
Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

     To receive disability benefits, claimants must be
"disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a),
(d).  A claimant is disabled under the Act when she is unable to
"engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d
Cir. 2000).  The impairment must be of "such severity" that the
claimant is unable to do his previous work or engage in any other
kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).  "The
Commissioner must consider the following in determining a
claimant's entitlement to benefits: '(1) the objective medical
facts [and clinical findings]; (2) diagnoses or medical opinions

6

based on such facts; (3) subjective evidence of pain or disability

. . . ; and (4) the claimant's educational background, age, and

work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262

(E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.

1999)).

Pursuant to regulations promulgated by the Commissioner,

a five-step sequential evaluation process is used to determine

whether the claimant's condition meets the Act's definition of

disability. *See* 20 C.F.R. § 404.1520.  This process is essentially

as follows:

> [I]f the Commissioner determines (1) that the claimant is not
> working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one [listed in Appendix 1 of the
> regulations] that conclusively requires a determination of
> disability, and (4) that the claimant is not capable of
> continuing in his prior type of work, the Commissioner must
> find him disabled if (5) there is not another type of work
> the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation

omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must

consider whether "the combined effect of any such impairment . .

. would be of sufficient severity to establish eligibility for

Social Security benefits." 20 C.F.R. § 404.1523.  Further, if the

Commissioner does find a combination of impairments, the combined

impact of the impairments, including those that are not severe (as

defined by the regulations), will be considered in the

determination process.  20 C.F.R. § 416.945(a)(2).  At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39.  However, if the record before the court provides "persuasive proof of disability and a remand for further

evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

<u>**DISCUSSION**</u>

## I.  The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the regulations, ALJ Miller (hereafter, the "ALJ") determined at step one that the plaintiff had not engaged in substantial gainful activity during the period from November 5, 2010, the alleged onset date of her disabilities, through December 31, 2015, her date last insured.  (Tr. at 392.)

At step two, the ALJ found that plaintiff suffered from the following severe impairments: bilateral degenerative arthritis of the feet, hypertension, clinical obesity with low back pain, major depressive disorder, and obsessive-compulsive disorder ("OCD").  (*Id.*)  The ALJ found that plaintiff's impairments resulted in "vocationally significant limitations" and lasted at a "severe" level for a continuous period of more than 12 months.  (*Id.*)  Therefore, the ALJ determined plaintiff's impairments were "severe" within the meaning of the Act. (*Id.*)

At step three, the ALJ determined that through the date last insured, plaintiff did not have an impairment or combination

9

of impairments that met or medically equaled the severity of one
of the listed impairments in 20 CFR Part 404 Subpart P, Appendix
1 ("Subpart P").  (*Id.* at 393.); 20 CFR 404.1520(d), 404.1525 and
404.1526.).   First, the ALJ found that claimant's physical
impairments neither medically met nor equaled, either singly or in
combination, pertinent Listings 1.00 (Musculoskeletal System) and
4.00 (Cardiovascular System).  (*Id.*)   With regard to plaintiff's
bilateral foot condition, the ALJ noted none of the treatment
records from plaintiff's foot surgeon Dr. Jaime Uribe, M.D. ("Dr.
Uribe") showed any abnormal examination findings or deficits that
would meet or medically equal the relevant criteria.   (*Id.*)
Additionally, the ALJ determined plaintiff's clinical obesity,
complaints of low back pain, and hypertension have neither caused
additional limitations nor resulted in complications that would
satisfy the criteria of Listings 1.00 and 4.00.

     Second, the ALJ found the severity of the claimant's
mental impairment did not meet or medically equal the criteria of
Listing 12.04 (Depressive, Bipolar, and Related Disorders) or
Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders) because
plaintiff's mental impairments did not cause at least two "marked"
limitations or one "extreme" limitation, outlined in 12.04(B) and
12.06(B).  (*Id.*)  Based on an examination of the plaintiff's
hearing testimony, her statements to her psychiatric nurse
practitioner, Thomas Perron, NP ("NP Perron"),  mental status

10

examination findings from plaintiff's own treatment providers, and outpatient mental health treatment records, the ALJ determined plaintiff had: (1) a mild limitation in understanding, remembering or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a mild limitation adapting or managing herself. (*Id.* at 393-94.) The ALJ noted plaintiff additionally failed to meet the criteria of Listings 12.04(C) and 12.06(C) because the evidence did not establish plaintiff had a "serious and persistent" mental disorder over a period of at least two years or that she lacked the minimal capacity to adapt to changes in her environment. (*Id.* at 394.)

At step four, the ALJ found that plaintiff had the Residual Functional Capacity ("RFC") to perform a range of light work as defined in 20 CFR 404.1567(b). (*Id.* at 395.) Specifically, the ALJ determined plaintiff could: (1) lift and/or carry 20 pounds occasionally, 10 pounds frequently; (2) stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday; and (3) occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*) The ALJ noted plaintiff could not climb ladders, ropes or scaffolds, and must avoid all exposure to unprotected heights and open machinery. (*Id.*) Further, in terms of mental restrictions, the ALJ determined plaintiff was able to understand, remember, and carry out simple instructions in a

routine work setting, but should avoid contact with the general public, group work, and tandem activities with co-workers. (*Id.*)

In making this determination, the ALJ relied on plaintiff's own statements and hearing testimony, as well as an extensive list of reports and medical evidence from treating and consultative sources, including Dr. Uribe, plaintiff's primary care provider Dr. Lidiya Markova, M.D. ("Dr. Markova"), consultative internist Dr. Vinod Thukral, M.D. ("Dr. Thukral"), consultative internist Louis Tranese ("Dr. Tranese"), Dr. Mikhail Grabovetsky, M.D. ("Dr. Grabovetsky"), consultative psychologist Dr. Angela Fairweather, M.D. ("Dr. Fairweather"), plaintiff's former psychiatrist Dr. Yuriy Dobry, M.D. ("Dr. Dobry"), State agency psychiatric consultant Dr. J. Belsky ("Dr. Belsky"), consultative psychologist Dr. Johanina McCormick, Ph.D. ("Dr. McCormick"), treating psychiatrist Molly McCarthy, D.O. ("Dr. McCarthy"), NP Perron, and plaintiff's former treating psychiatrist Dr. Brandon Ito, M.D. ("Dr. Ito"). (*Id.* at 395-404.)

The ALJ concluded the objective medical evidence in the record "did not show persistent or abnormal clinical examination findings, such as impaired gait, that would objectively suggest less than a light exertional capacity." (*Id.* at 400.) With regard to plaintiff's mental impairments, the ALJ concluded that the treatment record, up through the date last insured, "showed moderate symptoms, but does not show persistent or acutely abnormal

mental status examination findings . . . that would suggest the inability to perform the basic demands of unskilled work activity." (*Id.*)

Specifically, the ALJ afforded Dr. Uribe's opinions the most weight in reaching this conclusion. (*Id.* at 403.) On July 29, 2015, Dr. Uribe opined plaintiff: (1) could sit for 8 hours, and stand and/or walk for a total of 8 hours, per 8-hour workday, but could only lift and/or carry 10 pounds frequently; and (2) could occasionally bend, squat, and climb, but never operate bilateral leg or foot controls. (*Id.*) Dr. Uribe also noted plaintiff was "totally restricted" from unprotected heights or moving machinery. (*Id.*) On April 10, 2019, Dr. Uribe found plaintiff: (1) could lift and/or carry 20 pounds occasionally; (2) could only occasionally reach; (3) could never squat or climb; and (4) could never push or pull with the bilateral lower extremities. (*Id.*) The ALJ reasoned that as a "treating source," Dr. Uribe's opinions should be afforded "great weight," and his opinions were "supported by the longitudinal record as a whole." (*Id.*)

In contrast, the ALJ afforded the opinions of Dr. Ito and NP Perron little weight, despite their "treating source" status. (*Id.* at 403-04.) The ALJ reasoned that Dr. Ito's August 2015 opinion that plaintiff "would have marked social limitations" was inconsistent with the record, which showed plaintiff was able to take public transportation independently and has had a boyfriend

13

at times.  (*Id*. at 403.)   Furthermore, the ALJ noted Dr. Ito's opinions that plaintiff "had deficiencies in concentration, persistence, or pace, impacted by her needed to complete obsessions or compulsions, or by medication side effects" and that her concentration "would be impaired during episodes of depression or worsening of OCD symptoms" were "worst-case scenario[s]" unsupported by the record.  (*Id*.)   With regard to NP Perron's May 2018 opinion that plaintiff would have "marked limitations within all four 'paragraph B' domains, and was likely to be absent from work about 4 times per month," the ALJ reasoned it was "by far the most restrictive assessment in this case record, and [was] not matched by any of the other mental health opinions cited, even that of Dr. Ito."  (*Id*. at 404.)

At step five, the ALJ found that, based on plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).  (*Id*. at 405.)   At the hearing, the vocational expert testified plaintiff would be able to perform the requirements of occupations such as Racker, Inspector, and Housekeeper.  (*Id*.)   Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 404.1520(f) and 20 C.F.R. § 416.920(f),

since November 5, 2010, through December 21, 2015, the last date insured.  (*Id.* at 406.)

## II.  **The ALJ Properly Applied the Treating Physician Rule**

Plaintiff contends that the ALJ improperly rejected opinions by her treating sources Dr. Ito and NP Perron.  (Pl. Mem. at 8-11; Pl. Reply at 5-6.)  The court finds that the ALJ properly afforded Dr. Ito and NP Perron's opinions little weight in making her determination because their opinions were largely inconsistent with the other substantial evidence in the record.

### A. Legal Standard

Under the treating physician rule[1], a "treating source's opinion on the issue of the nature and severity of a [claimant's] impairment(s) will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); 20 C.F.R. §§ 404.1527(c)(2).  *See Molina v. Colvin*, No. 13-cv-4701, 2014 WL 3925303, at 2 (S.D.N.Y. Aug. 7,

---

[1] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule, *see id.* § 404.1527(c)(2), and the Court accordingly applies the rule to this case, as plaintiff filed her claim on April 12, 2012. *See, e.g., Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

2014) (finding the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record").

Specifically, where the "treating physician issued opinions that were not consistent" with "the opinion[s] of other medical experts," the treating physician's opinion is "not afforded controlling weight." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Therefore, while the ALJ "considers the data" these treating sources provide, she ultimately "draws [her] own conclusions as to whether those data indicate disability." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

An ALJ who does not accord controlling weight to the treating physician's medical opinion must consider various factors to determine how much weight to give to the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the amount of medical evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Burgess*, 537 F.3d at 128); *see* 20 C.F.R. § 404.1527(c)(2); *see also Adukpo v. Berryhill*, 19-cv-2709 (BMC), 2020 WL 3410333, at 1 (E.D.N.Y. Jun. 22, 2020). "The ALJ must then 'comprehensively set forth [her] reasons for the weight assigned to a treating physician's

16

opinion.'"  *Cichocki v. Astrue*, 534 F. App'x. 71, 74 (2d Cir. 2013)
(quoting *Burgess*, 537 F.3d at 129).

**B. Application**

The ALJ properly applied the treating physician rule in
affording Dr. Uribe's opinion, which was largely consistent with
the record as a whole, controlling weight, and affording Dr. Ito
and NP Perron's opinions, which were largely inconsistent with the
record, little weight.

On August 22, 2015, Dr. Ito opined that the plaintiff
would have "marked social limitations" and that she had
"deficiencies in concentration, persistence, or pace, impacted by
her need to complete obsessions or compulsions, or by medication
side effects." (Tr. at 403.)  Further, he noted her concentration
would be impaired during episodes of depression or worsening of
OCD symptoms. (*Id*.)  Likewise, NP Perron opined on May 26, 2018,
that plaintiff would have "marked limitations in all four
'paragraph B' domains, and was likely to be absent from work about
4 times per month." (*Id*. at 404.)

However, Dr. Ito and NP Perron's findings and opinions
are wholly inconsistent with the opinions of other treating
sources, physicians and medical examiners located in the record
and relied on by the ALJ in his decision.  In contrast to Dr. Ito
and NP Perron's findings, several consultative sources opined
plaintiff "did not show persistent or abnormal clinical

17

examination findings, such as impaired gait, that would objectively suggest less than a light exertional capacity." (*Id.* at 400.) Furthermore, with regard to plaintiff's mental impairments, her treatment record "showed moderate symptoms" but did not show "persistent or acutely abnormal mental status examination findings that would suggest the inability to perform the basic demands of unskilled work activity." (*Id.*) The ALJ noted specifically that plaintiff was "virtually asymptomatic during her October 2013 psychiatric evaluation and had good effect on medication without side effects, and only mild depressive symptoms during her July 2016 psychiatric evaluation." (*Id.* at 403-04.)

Thus, because Dr. Ito and NP Perron's opinions were wholly inconsistent with the opinions of an extensive list of medical experts, the ALJ properly afforded their opinions less weight. *See Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 KAM, 2013 WL 1210932, at *18 (E.D.N.Y. Mar. 25, 2013) (holding the ALJ appropriately refused to afford controlling weight to a treating source's opinion that plaintiff was disabled where the source's opinion was "inconsistent with other substantial evidence in the record, including the opinions of the medical expert, the observations of [plaintiff's] school teacher, and [plaintiff's] education records.").

In conducting her RFC assessment, the ALJ additionally relied on the plaintiff's hearing testimony and statements, which were also inconsistent with Dr. Ito and NP Perron's opinions. For example, while Dr. Ito stated plaintiff "would have marked social limitations," plaintiff testified to her ability to take public transportation independently and stated she has had a boyfriend at different times throughout the record. As NP Perron and Dr. Ito's opinions were inconsistent with plaintiff's testimony as well as medical expert opinion, they were properly afforded little weight. *See Snell*, 177 F.3d at 133 ("[T]he less consistent that [a treating source] opinion is with the record as a whole, the less weight it will be given.").

Pursuant to the treating physician rule, the ALJ "set forth [his] reasons for the weight assigned" to Dr. Ito and NP Perron's opinions. *Cichocki*, 534 F. App'x. at 74. With respect to Dr. Ito's opinions, the ALJ explained he afforded them little weight because Dr. Ito proffered "worst-case scenario[s]" unsupported by the record. (Tr. at 403.) With regard to NP Perron's May 2018 opinion that plaintiff would have "marked limitations within all four 'paragraph B' domains, and was likely to be absent from work about 4 times per month," the ALJ reasoned it was "by far the most restrictive assessment in this case record, and [was] not matched by any of the other mental health opinions

cited, even that of Dr. Ito," and therefore also afforded it little weight. (*Id.* at 404.)

Thus, because the ALJ afforded controlling weight to only those sources consistent with the record as a whole and set forth his reasons for the respective weight he assigned to each opinion he evaluated, the ALJ properly applied the treating physician rule in making his determination on plaintiff's disability status.

## III. Substantial Evidence Supports the ALJ's Finding that Plaintiff Is Not Disabled

Plaintiff argues the ALJ's conclusion that she retained the RFC for "light work" is not supported by the substantial medical evidence of the record, mainly because the ALJ "misread" and "misinterpreted" Dr. Uribe's opinion. (ECF Nos. 14 and 24, Pl. Mem. at 1 and Pl. Reply at 1.).  However, the ALJ's conclusion that plaintiff is capable of performing "light work" is supported by Dr. Uribe's opinion and other substantial evidence in the record.

### A. The Substantial Evidence Standard

In reviewing decisions of the ALJ, this court must determine "whether substantial evidence supports [her] decision." *Jones ex rel. T.J. v. Astrue*, No. 07-CV-4886, 2010 WL 1049283, at *5 (E.D.N.Y. Mar. 17, 2010).  "Substantial evidence" is relevant

evidence "which a reasonable mind might accept as adequate to support a conclusion." *Halloran*, 362 F.3d at 31.

### B.   Application

Plaintiff concedes that the ALJ properly afforded Dr. Uribe's opinion "great weight" but argues that the ALJ misinterpreted his opinion in determining plaintiff's RFC.  In 2015, Dr. Uribe opined plaintiff could sit for 8 hours, and stand and/or walk for a total of 8 hours, per 8-hour workday, and could lift and/or carry 10 pounds frequently. In 2019, he gave similar limitations, but found plaintiff could lift and/or carry 20 pounds occasionally.  (Tr. at 403.)

Contrary to the plaintiff's contention, the ALJ's conclusion that plaintiff can perform light work is supported by Dr. Uribe's opinion.  SSR 83-10 describes "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  Titles II & XVI, Appendix 2, SSR 83-10 (S.S.A. 1983).  "Frequent" is defined as "occurring from one-third to two-thirds of the time" and "requires being on one's feet up to two-thirds of a workday."  (*Id.*)  Thus, a "full range of light work" under SSR 83-10 "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  (*Id.*)

Based Dr. Uribe's opinion and a review of the record, the ALJ concluded plaintiff had the RFC to perform a range of light

work as defined in 20 CFR 404.1567(b). (*Id*. at 395.)
Specifically, the ALJ determined plaintiff could: (1) lift and/or
carry 20 pounds occasionally, 10 pounds frequently; (2) stand
and/or walk, with normal breaks, for a total of 6 hours per 8-hour
workday; and (3) occasionally balance, stoop, kneel, crouch, and
crawl. (*Id*.) The ALJ noted plaintiff could not climb ladders,
ropes or scaffolds, and must avoid all exposure to unprotected
heights and open machinery. (*Id*.) Further, the ALJ determined
plaintiff was able to understand, remember, and carry out simple
instructions in a routine work setting, but should avoid contact
with the general public, group work, and tandem activities with
co-workers. (*Id*.) Plaintiff argues that the standing and walking
conditions identified by Dr. Uribe would "not permit plaintiff to
perform" at work. (Pl. Reply at 1.) However, "[a] reviewing court
does not engage in a *de novo* review of the administrative record
to see if an alternative finding could have been possible;" rather,
this court only determines whether substantial evidence supports
the ALJ's decision. *Schaal v. Apfel*, 134 F.3d 496, 501 (2d
Cir.2009).

The ALJ's RFC determination was also supported by
numerous reports of treating and consultative sources on
plaintiff's physical and mental condition, as well as the
plaintiff's own hearing testimony and statements to those sources.
In her RFC determination, the ALJ referenced plaintiff's

consultations with Dr. Uribe, Dr. Markova, Dr. Thukral, Dr. Tranese, Dr. Grabovetsky, Dr. Fairweather, Dr. Dobry, Dr. Belsky, Dr. McCormick, and Dr. McCarthy, which all supported a finding that plaintiff is able to engage in light work.

The ALJ also referenced plaintiff's 2019 hearing testimony that she: (1) takes the train and travels by herself; (2) takes medication for pain in her foot with no side effects; (3) is able to do grocery shopping and laundry; (4) is able to walk for 10 minutes at a time; (5) had a problem with OCD which "ended some time ago;" (5) has one or two friends; (6) is able to sleep through the night; and (7) can prepare "simple meals, such as frying eggs or preparing canned food." (Tr. at 396.) He further noted that "various statements throughout the record," including treatment records, "show[ed] that [plaintiff was] able to engage in a wide variety of household chores, engage in some degree of socialization, and take public transportation independently," and was "able to engage in romantic relationships," and that outpatient psychiatric progress notes, showed "her alleged symptoms were not unremitting" and indicated "she had good effect when taking her medication." (*Id.* at 400-401.)

Citing the record, including the opinions of medical experts, the ALJ concluded that plaintiff can perform light work. *See Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 387-88 (2d

Cir. 2010) (finding substantial evidence supported the ALJ's determination that plaintiff was not disabled where the ALJ relied on "various medical and educational reports bearing upon [plaintff's] learning disability and ADHD," plaintiff's hearing testimony, and other documents on record).

The plaintiff has not described with particularity what aspects of the administrative record are lacking, and notably, the ALJ is not "required to mention every item of testimony presented . . . or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Heckler*, 722 F.2d at 1040.  Therefore, contrary to plaintiff's contentions, substantial evidence supports the ALJ's RFC determination and the finding that plaintiff is not disabled within the meaning of the applicable law.

## CONCLUSION

The Commissioner's finding that plaintiff was not disabled as defined by the SSA was supported by substantial evidence in the record, and the ALJ properly applied the treating physician rule to plaintiff's case. Accordingly, plaintiff's motion for judgment on the pleadings is DENIED and defendant's cross-motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

DATED: September 23, 2021
      Brooklyn, New York

                                _____/s/_____
                                **HON. KIYO A. MATSUMOTO**
                                United States District Judge